IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHEILA R. LAYMON,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | )   **Case No.** 14-cv-39-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
|        **Defendant.** | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Sheila R. Laymon, through counsel, seeks review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB).

**Procedural History**

Plaintiff applied for benefits on September 4, 2010, alleging disability beginning on September 1, 2010. (Tr. 9). After holding an evidentiary hearing, ALJ Ayrie Moore denied the application for benefits in a decision dated July 17, 2012. (Tr. 9-20). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).  See, Doc. 10.

1

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ's decision contained an error of law or fact and was not supported by substantial evidence when he stated that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

2. The ALJ erred in weighing the medical opinions.

3. The ALJ did not properly evaluate plaintiff's credibility.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, **649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520;** *Simila v. Astrue*, **573 F.3d 503, 512-513 (7th Cir. 2009);** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the

3

Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984).** *See also Zurawski v. Halter*, **245 F.3d 881, 886 (7th Cir. 2001**)(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **91 S. Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of

4

the ALJ.  *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Moore followed the five-step analytical framework described above.  He determined that plaintiff had not been engaged in substantial gainful activity since the date of her application. He found that plaintiff had severe impairments of post laminectomy syndrome/failed back syndrome status post lumbar fusion for lumbar degenerative disc disease, lumbar spondylosis, lumbar radiculopathy, and Graves' disease hyperthyroidism. The ALJ found that plaintiff had the residual functional capacity to perform work at the light level, with some limitations. Based on the testimony of a vocational expert the ALJ found that plaintiff was able to perform her past relevant work of a receptionist, and was able to do other work that exists in significant numbers in the regional and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born in 1961 and was 49 on the alleged onset date of September 1, 2010. She is insured for DIB through December 31, 2014. (Tr. 181). Plaintiff completed two years of college and received an associate's degree. (Tr. 186).

According to plaintiff, her multiple bulging and deteriorating discs limit her ability to work. (Tr. 185). She previously worked as a monitor in a care facility for disabled adults, a janitor, a line worker, a machine operator, and a secretary, (Tr. 186, 196).

In a Function Report submitted in October, 2010, plaintiff stated she could not sit, stand, or walk for long periods of time. Her previous job required her to sit at a desk, walk up and down stairs, and lift filing cabinets throughout her day. (Tr, 208). She stated she did some housework but had to alternate between sitting and standing to relieve pain and sometimes needed help. (Tr. 209-10). She usually prepared frozen meals, but if she cooked something she had to sit down after standing for a long time. (Tr. 210). She had difficulty falling asleep and staying asleep due to the pain. (Tr. 209).

She reported having difficulties lifting, squatting, bending, standing, walking, sitting, and completing tasks. (Tr. 213). She was on Vicodin for pain and it caused her to be drowsy and have constipation. (Tr. 215).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on June 20, 2012. (Tr. 27).

Plaintiff was married and had six adult children. (Tr. 29-30). One of her daughter's friends lived with her and her husband, but none of their children resided in their home. (Tr. 30).

Plaintiff testified to being in pain all the time because of the herniated disc that compresses the nerves in her back. She had spinal fusion surgery in January, 2011, but her pain was not relieved. She received treatment for her pain from her family doctor at the time of the hearing, but previously went to a pain management facility. (Tr. 32-33). Plaintiff had epidural injections and a device was put in her back to help with pain but neither provided relief. (Tr. 33-34). She never had physical therapy and it was not recommended. After her surgery, plaintiff felt there was no improvement in her pain. She stated that she still had radiating pain down both of her legs. (Tr. 35).

Plaintiff had two bladder surgeries for a pelvic organ prolapse. She felt the medication she took for it helped and the issues were under control. (Tr. 37). She took Vicodin and Gabapentin for pain, Pemazol for hypothyroidism, and Celexa for depression. The Vicodin made her itch so she took allergy pills when she took Vicodin. (Tr. 38). The Vicodin also caused the plaintiff to have constipation. Plaintiff felt this issue was serious as she was concerned she would tear her bladder back down after her surgeries. Her doctor told her that all pain medications have that side effect. (Tr. 39). Her family doctor treated her for depression. (Tr. 38). She felt that if she were able to work she would not be

depressed and therefore her depression would not hinder her ability to work. (Tr. 39).

Plaintiff stated her pain was primarily in her low back and radiates down both legs. She described the pain as sharp shooting pain that ached at times. (Tr. 43). She had back pain all the time. The pain worsened when she walked for long distances, sat in one position for too long, and bent over. (Tr. 44). Plaintiff testified to being able to sit or stand for thirty to forty minutes at most without having to move due to pain. (Tr. 45). She could lift ten pounds but not from the floor. (Tr. 46). Plaintiff stated her pain was normally around a seven on a scale from one to ten. (Tr. 53).

A vocational expert (VE) also testified. The VE asked plaintiff a series of questions to explain her role as a secretary and determined the position to be more closely related to that of a receptionist. The ALJ asked the VE to assume a person could perform light work, occasionally do postural activities, with no climbing of ladders, ropes, or scaffolds, no bending from the waist, and no lifting from the waist to the floor. (Tr. 59). The VE testified that plaintiff could perform work as a sedentary receptionist as it is generally performed. (Tr. 60). She could also perform work as a telephone order clerk with the skills she acquired during her job as a receptionist. (Tr. 61). She would be able to sit for thirty minutes and stand and stretch after that if needed. (Tr. 62).

### 3. Medical Treatment

Plaintiff had a history of back pain, gynecological and urinary problems, and Grave's disease.

Plaintiff's back pain began when she was around nineteen years old and was injured in a lifting accident. She had another back injury ten years ago that caused a herniated disc. In April, 2010, she had an MRI of her lumbar spine performed. The results showed multilevel lumbar degenerative disc disease with mild stenosis and mild compression of the nerve roots at L4-S1. Schmorl's nodes were found at the inferior endplate of T12 and L1 and the superior endplate of L3. Mild disc bulge and dehydration of intervertebral disks was also found. (Tr. 241-42).

Plaintiff saw Dr. Bashar Alzahabi at Carle Spine Institute after the MRI and he reported no significant problems except positive straight leg raising on the left. He recommended steroid injections and noted plaintiff was still able to work. (Tr. 298). She underwent steroid injections from Dr. Victoria Johnson at Carle Spine Institute that seemed to help at first. (Tr. 253). However, plaintiff later reported the injections were no longer helping. (Tr. 296).

On September 1st, 2010, plaintiff felt her back pain became unbearable and she could no longer work. She saw Dr. Johnson that day and was reported to be in moderate distress. Straight leg raising was mildly positive and she had mild tenderness in her left gluteal region. Dr. Johnson's impression was lumbar spondylosis with radiculopathy. (Tr. 260). She gave plaintiff more steroid injections to help, but plaintiff's pain remained the same. (Tr. 268).

In October, 2010, plaintiff saw Dr. Andrew Wilson at the Terre Haute Neuro Spine Institute. Dr. Wilson reported plaintiff having an antalgic gait, decreased flexion with pain, and decreased extension with pain. (Tr. 302). Plaintiff then underwent lumbar provocative discography which was positive at L5-S1. (Tr. 309-10).

In January, 2011, an interbody fusion, transverse process fusion with instrumentation and placement of a bone stimulator was performed. (Tr. 328-29). Plaintiff still had problems with her back after this procedure and underwent an additional MRI in March, 2011. The MRI showed postoperative changes, small disc bulge, and mild narrowing of neural foramina but no significant discogenic changes. (Tr. 374-75). A trial spinal cord stimulator was inserted in August, 2011, but was removed a week later. (Tr. 729-732).

Plaintiff had a history of gynecological and urinary complications. She had symptomatic vaginal vault prolapse. She had an endoscopic four corner bladder suspension performed in July, 2010. (Tr. 294). In September, 2011, plaintiff went to Effingham Obstetrics and Gynecology Associated where it was discovered her vaginal vault had prolapsed. (Tr. 444). She underwent surgery to repair the prolapse in October, 2011. (Tr. 457-59).

Plaintiff also visited the doctor several times to monitor her thyroid due to her diagnosis with Graves' disease. (Tr. 410-17). The medications plaintiff took to regulate her thyroid function were reportedly working. (Tr. 417).

Plaintiff regularly saw a family nurse practitioner, DeAnn Miller. (Tr. 280-83, 338-39, 449, 465, 467-69). Ms. Miller's treatment notes indicate plaintiff had pain in her back, knee, and problems with her prolapse surgery. (Tr. 280-83, 449). However, her records do not indicate she found any abnormal findings during her exams. Ibid. Ms. Miller filled out a Medical Source Statement claiming plaintiff could never lift or carry over ten pounds, and could only sit, stand, or walk for a maximum of thirty minutes at a time in a six hour work day. She also stated plaintiff could only stand for a maximum of ten minutes total in a six hour work day. (Tr. 471-72). She noted plaintiff could only occasionally balance and climb stairs and ramps. Plaintiff could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (Tr. 474).

### 4. RFC Assessments

Two state agency consultants performed RFC assessments based on a review of plaintiff's records.

The first RFC assessment was performed by Dr. Julio Pardo in November, 2010. (Tr. 312-18). He believed plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. He opined that plaintiff could stand, walk, or sit for six hours out of an eight hour work day. (Tr. 312). She was limited only to occasional stooping. (Tr. 313).

The second RFC assessment was done by Dr. Towfig Arjmand in February, 2011. (Tr. 347-53). He also felt plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk, or sit for six hours out of an eight

hour work day. (Tr. 347). He felt plaintiff could frequently balance, but could only occasionally climb, stoop, kneel, crouch, or crawl. (Tr. 348).

## Analysis

To begin, this Court notes that all of plaintiff's arguments are entirely undeveloped. The Seventh Circuit has stated that undeveloped arguments may be deemed waived. Courts are not expected to research and make legal arguments for a party, especially when the party is represented by counsel. *Nelson v. Napolitano*, **657 F.3d 586, 590 (7th Cir. 2011).** However, this Court has reviewed the record in conjunction with the ALJ's determinations to make the decisions below.

Plaintiff's first argument was that the ALJ erred in finding plaintiff's impairments do not equal that of any listed impairment. Plaintiff cites listing 1.04 for disorders of the spine and states that there is "ample evidence to support" her argument that she meets a listed impairment. However, as the Commissioner points out, plaintiff fails to address the ALJ's argument that the medical evidence did not demonstrate plaintiff's musculoskeletal impairments met or medically equaled the criteria for listing 1.04. (Tr. 12).

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled.  In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing. 20 C.F.R. §416.925(d).  Plaintiff bears the burden of showing that his condition

meets or equals the listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379-380 (7th Cir. 1999).

The ALJ considered and evaluated plaintiff's entire medical history on record, including the conditions plaintiff lists, and analyzed thoroughly why the listing was not met. The ALJ noted the nerve root compression was only mild, she was able to ambulate effectively, and she had normal muscle strength and tone. Additionally, the ALJ stated the sporadic incidents of defects plaintiff did have were apparently resolved after her lumbar fusion surgery. (Tr. 12). The ALJ noted plaintiff's doctors found no abnormal exam findings on several occasions. (Tr. 12-15). Plaintiff failed to explain how the ALJ erred in his analysis and how she met the criteria for listing 1.04. Therefore, the ALJ's decision regarding plaintiff's impairments not meeting listing 1.04 stands.

Plaintiff's second argument is the ALJ did not give adequate weight to her treating source, a family nurse practitioner Deann Miller. Plaintiff admits Ms. Miller is not an acceptable medical source per the regulations. However, plaintiff contends that her opinion should be given more weight than the state agency consultants because she had treatment history with plaintiff. Plaintiff is incorrect.

First, it is appropriate for an ALJ to rely upon the assessment of a state agency consultant. *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005); *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the

13

Act." **Social Security Ruling 96-6p, at 2.** Second, the Seventh Circuit has stated that a treating doctor's opinion is only entitled to weight when it is supported by the objective medical evidence. *Alena Denton v. Astrue*, **596 F.3d 419 (7th Cir. 2010).**

As plaintiff points out, Ms. Miller was not an acceptable medical source to begin. Additionally, the ALJ gave great weight to the state agency consultants' opinions because they were supported by the record. (Tr. 18). On the other hand, the ALJ gave Ms. Miller's opinion little weight because her source statement was not internally consistent with her exam notes, nor was it consistent with the rest of the record. (Tr. 17-18). As the Commissioner points out, Ms. Miller was inconsistent even in her medical source statement where she opined plaintiff could stand for thirty minutes at a time without interruption but on the next question stated plaintiff could only stand ten minutes in an eight-hour period. (Tr. 472). Plaintiff never addresses the inconsistencies or explains how Ms. Miller's source statement is supported by her records or the rest of the medical evidence. Therefore, the ALJ's decision to give Ms. Miller's opinion little weight is affirmed.

Plaintiff's final argument was that the ALJ erred in making his credibility determination. Plaintiff's argument is yet again undeveloped as it is only two sentences that cite no portion of the record, the ALJ's decision, or controlling case law. However, this Court reviewed the ALJ's decision and found it to be sound. Credibility determinations can only be overturned when they are found to be "patently wrong." *Eichstadt v. Astrue*, **534 F.3d 663, 667-668 (7th Cir. 2008)**,

citing *Jens v. Barnhart*, **347 F.3d 209, 213 (7th Cir. 2003).** The analysis is deemed to be patently wrong "only when the ALJ's determination lacks any explanation or support." *Elder v. Astrue*, **529 F.3d 408, 413-414 (7th Cir. 2008).** The analysis here is far from patently wrong. The ALJ gave extensive reasons for finding plaintiff not entirely credible, such as plaintiff's objective medical evidence, medications, and daily activities. (Tr. 13-18). The ALJ's reasoning built the required logical bridge and therefore his credibility determination stands.

In sum, none of plaintiff's arguments are persuasive. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, **688 F.3d 306, 310 (7th Cir. 2012)**; *Elder v. Astrue*, **529 F.3d 408, 413 (7th Cir. 2008).** ALJ Moore's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Moore committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Sheila R. Laymon's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATE: October 23, 2014.**

         <u>**s/ Clifford J. Proud**</u>

         **CLIFFORD J. PROUD**

         **UNITED STATES MAGISTRATE JUDGE**